**Philip YOUNG, Plaintiff,**

v.

**CITY OF SIMI VALLEY, a Municipal Corporation, Defendant.**

**No. CV94–8305WJR (AJWX).**

United States District Court,
C.D. California.

Aug. 27, 1997.

Roger Jon Diamond, Santa Monica, CA, for Plaintiff.

Bert H. Deixler, Natasha A. Kotto, McCambridge, Deixler & Marmaro, Los Angeles, CA, for Defendant.

ORDER RE: PLAINTIFF PHILIP YOUNG'S MOTION FOR JUDGMENT GRANTING DECLARATORY AND INJUNCTIVE RELIEF.

REA, District Judge.

Plaintiff's motion for judgment granting declaratory and injunctive relief was filed on

June 9, 1997, and oral argument was heard on July 21, 1997. After having considered the oral argument, and reviewed the papers submitted in support of and in opposition to the foregoing motion, the file in this case, and the applicable authorities, the Court hereby GRANTS plaintiff's motion for judgment granting declaratory and injunctive relief.

### DISCUSSION

#### A. Procedural Basis for the Instant Motion.

The instant case was tried by a jury on May 13, 14, 15 and 20, 1997. At the close of the presentation of all evidence on May 20, 1997, Plaintiff filed a motion under Rule 50 for judgment as a matter of law. The Court denied the motion on May 21, 1997, indicating that it wished for the question to go to the jury at that time.

The jury was instructed on May 21, 1997, and deliberated through part of May 23, 1997. At the conclusion of its deliberations, the jury indicated that it had answered two of three special interrogatories, but that it was unable to answer all three interrogatories. Accordingly, it indicated that it was unable to reach a verdict. Hence, no verdict was rendered and the Court declared a mistrial.

On June 9, 1997, plaintiff Philip Young filed the instant motion, renewing his request for judgment as a matter of law. Under Rule 50(b) of the Federal Rules of Civil Procedure, such post-trial renewal of a motion for judgment as a matter of law is appropriate, whether or not a verdict has been rendered. Specifically, the rule states:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment.... In ruling on a renewed motion, the court may:
>
> (1) if a verdict was returned:

> (A) allow the judgment to stand,
>
> (B) order a new trial, or
>
> (C) direct entry of judgment as a matter of law, or
>
> (2) if no verdict was returned;
>
> (A) order a new trial, or
>
> (B) direct entry of judgment as a matter of law.

Fed.R.Civ.P. 50(b).

Hence, the instant motion, which essentially serves to renew plaintiff's motion for judgment as a matter of law made at the close of evidence, is procedurally appropriate. Although the Court, at the close of evidence, indicated that it wished to allow the jury to attempt to resolve the issues raised, the Court now addresses the legal issues raised by the instant motion for judgment as a matter of law.

#### B. Plaintiff Has Standing to Bring the Instant Motion.

■ Defendant argues that plaintiff has no standing to bring the instant motion, as plaintiff made clear at trial that, given the current system, he has no intention of reapplying to open a nude dancing facility in the City of Simi Valley. Even given these facts, defendant's argument is not well taken. In fact, the instant case presents precisely the type of "chilling effect" which courts have made clear *is* sufficient for purposes of bringing a First Amendment lawsuit.

Where a complainant is "either presently or *prospectively* subject to the regulations, proscriptions, or compulsions that he [is] challenging" under the First Amendment, then standing is appropriate. *Laird v. Tatum,* 408 U.S. 1, 11, 92 S.Ct. 2318, 2324, 33 L.Ed.2d 154 (1972) (emphasis added). *See also Penny Saver Publications v. Village of Hazel Crest,* 905 F.2d 150, 154 (7th Cir.1990). Indeed, this is clearly a case in which the deterrent effect on legitimate expression is "both real and substantial." *See Young v. American Mini Theatres,* 427 U.S. 50, 60, 96 S.Ct. 2440, 2447, 49 L.Ed.2d 310 (1976), *citing Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975). Here, Mr. Young sought twice to

apply for a permit to open a nude dancing facility in Simi Valley. On both occasions, Mr. Young was unsuccessful, based upon the failure of his respective locations to comply with the subject ordinances. Furthermore, Mr. Young specifically testified that, given his previously futile efforts and the time and money invested in these earlier efforts, he would not consider reapplying for a permit so long as the current system remains in effect in Simi Valley. This presents a classic case of an individual who is deterred from exercising his First Amendment rights in a "real and substantial" way. Hence, Mr. Young clearly has standing to challenge the instant ordinance.

## C. The Instant Ordinance is Unconstitutional as a Matter of Law.

### 1. Standard for Evaluating "Content Neutral" Zoning Regulations Restricting Non–Obscene Adult Entertainment.

"Courts have considered topless dancing to be expression, subject to protection within the free speech and press guarantees of the first and fourteenth amendments." *Kev, Inc. v. Kitsap County,* 793 F.2d 1053, 1058 (9th Cir.1986). *See also, e.g., Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 65, 101 S.Ct. 2176, 2180, 68 L.Ed.2d 671 (1981).

City ordinances such as the one at issue here, which do not ban topless dancing altogether, but rather restrict the areas in which topless dancing may exist, have been analyzed as "time, place and manner" regulations. *See Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 46, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986). This is particularly so where, as here, an ordinance is justified on the basis of alleged "secondary effects" of topless dancing establishments, such as increased crime and prostitution. *Renton,* 475 U.S. at 49, 106 S.Ct. at 929; *Kev,* 793 F.2d at 1059.

"Time, place and manner" regulations pass constitutional muster if (1) they are designed to serve a substantial governmental interest and (2) they allow for "reasonable alternative avenues of communication." *Renton,* 475

U.S. at 50, 106 S.Ct. at 930; *Kev,* 793 F.2d at 1058.

### 2. Reasonable Alternative Avenues of Communication.

In the instant motion, plaintiff does not challenge the "substantial governmental interest" underlying the ordinance. Rather, plaintiff's challenge essentially speaks to the issue of "reasonable alternative avenues of communication." *See infra, citing Renton,* 475 U.S. at 50, 106 S.Ct. at 930. Specifically, plaintiff asserts that two primary elements render the system invalid for failure to provide reasonable alternative means of speech. First, plaintiff asserts that a "sensitive use" essentially has the power, at any time during the lengthy permit process, to obtain an over the counter zoning clearance within a distance prohibitively close to the proposed adult facility, thus effectively "knocking out" the applied for location as a permissible area for an adult facility. This, argues plaintiff, provides "sensitive uses," such as churches and youth-oriented businesses, with a de facto veto over proposed nude dancing facilities. Second, plaintiff asserts that the number of locations which would be permissible under the ordinance is simply too small to amount to a "reasonable" number of alternative sites, even assuming that none of the sites were to be "knocked out" at the last minute by a sensitive use.

The Court agrees with plaintiff. As to the latter issue, although there is no constitutional "minimum" number of sites as a matter of general law, it is appropriate, on a case by case basis, to determine whether an unreasonably low number of sites exists in a given area. In this instance, the Court finds that the subject ordinance leaves open an unreasonably, and hence, unconstitutionally low number of alternative locations. Although this in itself would be a sufficient basis upon which to enjoin the ordinance, the Court will also address the former issue, at least within the factual framework involving the paucity of alternative locations here available. As to the former issue, the Court agrees that this is essentially an issue of first impression, as no Ninth Circuit or Supreme Court authority speaks directly to the constitutionality of a

scheme by which a school, church, or other "sensitive interest" can de facto "knock out" a location subsequent to a permit application by obtaining its own zoning clearance. Nonetheless, the Court finds that the effect of this practice, at least where the practice is combined with a paucity of locations as is the case here, is such as to effectively preclude "reasonable alternative means of communication".

### a. Ability of Conflicting Uses to "Knock Out" a Location at Any Stage of the Permit Process.

■ Defendant does not dispute that, under the current system, a party seeking to open a nude dancing facility must apply for a special use permit, and that obtaining a special use permit necessarily requires a finding that the prescribed distance requirements from certain "sensitive uses," and from other adult facilities are complied with. Defendant further does not dispute that a "sensitive use", such as a religious organization, can theoretically apply for and obtain an over the counter permit as late as the last day of the permit process, and that such a successful application would effectively "knock out" the pending adult usage application if the latter application would be located within a prohibitively close range to the sensitive usage.

Although defendant does not dispute these facts, defendant does argue that there is no case on point which prohibits such a process. Although defendant appears to be correct in noting that the instant question is one of first impression, the Court does not agree that Simi Valley's process thus is necessarily constitutional. To the contrary, the authority which does exist as to the general question of "reasonable alternative avenues for communication" leads us to conclude that a system whereby third parties can effectively nullify the few areas set aside as "reasonable alternative avenues," at least where there is such a paucity of alternative sites as exists in the instant case, makes it unreasonably difficult, if not impossible, for an adult usage applicant to complete the permit process, and thus is unconstitutional.

The crux of our reasoning lies in the meaning which has been attributed to the term, "reasonable alternative avenues of communication." In *Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524, 1529 (9th Cir. 1993), the Ninth Circuit focused the inquiry as follows: "The test for determining whether the Adult Businesses' First Amendment rights are threatened is whether a local government has 'effectively den[ied] ... [the Adult Businesses] a reasonable opportunity to open and operate' their enterprise within the city in question." *Id., citing City of Renton,* 475 U.S. at 54, 106 S.Ct. at 932.

In this case, we have a paucity of locations, as elaborated upon below, combined with a system whereby a "sensitive use" can effectively veto any one of those locations whenever an application for adult usage is made, even if the permit process has been nearly completed. For purposes of the instant motion, we need decide only that such a system of de facto veto power on the part of churches, schools, etc. over protected first amendment activity is unconstitutional where the factual circumstances are such that alternative locations are as limited as they are in this case. The two factors combine to make it extremely likely that an adult usage applicant, such as Mr. Young, will have an extraordinarily difficult time finding a satisfactory alternative location and completing the permit application process with regard to that location.

Furthermore, the failure of Simi Valley to narrowly tailor its statute, *see Renton,* 475 U.S. at 52, 106 S.Ct. at 931 (analyzing degree to which statute at issue was narrowly tailored), is evident in the fact that other alternatives could well have been utilized which would have avoided the constitutional infirmity existent here. Although it is not our role to prescribe precisely how Simi Valley should go about altering their ordinance so as to comply with the Constitution, we note merely for illustrative purposes that Simi Valley could, for example, have constructed an ordinance which, from the time of adult usage application, would effectively waive the existing distance requirements with regard to any new churches, schools or other "sensitive uses" that might arise. In that way, churches, schools and other sensitive uses would remain free to open, but would be on

notice that, from the time of an adult usage application, they would be taking the risk of opening within close range of an adult theater. The choice would obviously then be for the sensitive use themself to make—either go elsewhere (which is likely what the sensitive use would do once the permit were finally approved), or risk locating themself near an adult usage. While this obviously would be less preferable to the drafters of the ordinance than the more restrictive means currently employed, this would also be far less likely to run afoul of the constitution, as it would provide potential adult theater owners with a reasonable opportunity to find alternative avenues of communication.[1]

In short, the existence of a relative paucity of alternative avenues of communication, combined with a process which effectively enables sensitive usages to prevent an adult usage from successfully completing its permit process for one of the available locations, unreasonably restricts potential means of communication for those wishing to establish adult clubs. Hence, the ordinance as it currently exists and as it is currently applied, runs afoul of the First Amendment.[2]

### b. Existence of No More Than Three to Four Potential Locations Which Could Operate Simultaneously.

■ The Court also notes, as alluded to above, that the current ordinance is unconstitutional on the independent basis that, even without the effective veto ability of sensitive usages, the ordinance simply does not provide for a sufficient number of reasonable alternative locations. It was largely undisputed at trial that the maximum number of sites which could exist at one time, given the 1000 foot buffer requirement, is three. Defendant did point out, however, that defen-

dant's expert, although conceding at trial that there were essentially only three separate areas within the city in which locations could simultaneously exist without infringing the 1000 foot buffer zone, also opined that one might conceivably be able to stretch the distance between two locations so as to amount to a total of four locations. We will assume, then, for purposes of the instant motion, that the total number of sites which can exist simultaneously is four. We further note, of course, that the total number of potential locations, without accounting for the requirement that no adult location exist within 1000 feet of another adult location, is of course greater.

Indeed, while, accepting defendant's evidence as true, the total number of possible locations, not accounting for the required buffer zone between adult usages, is 35–120, see Opposition at 6, the most relevant number for inquiry is four—as this is the number of adult usages which could conceivably exist at the same time. See 3570 East Foothill Blvd., Inc. v. City of Pasadena, 912 F.Supp. 1257, 1264 (C.D.Cal.1995). The Ninth Circuit in Walnut Properties, Inc. v. City of Whittier, 861 F.2d 1102 (9th Cir.1988), analyzing a similar ordinance, made clear that the primary inquiry in determining whether a "reasonable" number of alternative sites existed was the total number of sites which could exist simultaneously. There, the Court stated:

> [u]nder the terms of the ordinance in question, an estimation of total available acreage is next to meaningless. This is not a case in which a greater amount of acreage would necessarily allow a greater number of sites for adult businesses. Instead, this ordinance imposes a 1,000–foot separation

---

1. The Court again stresses that it is by no means directing or prescribing that the example here cited be utilized by Simi Valley. Rather, the Court makes the instant point only to illustrate the existence of constitutional alternatives to Simi Valley's scheme.

2. Defendant argues that it would be improper to find that a mere application for zoning approval creates a vested property interest in the applicant. The Court's holding is not based upon the purportedly vested property rights of an individual applicant. Rather, the Court's holding is sim-

ply that the overall effect of Simi Valley's scheme is such as to make it unreasonably difficult, and hence unconstitutionally difficult, for an individual to open a nude dancing facility. This is not to say that no constitutional system could possibly exist whereby an individual could lose their chosen and applied for location during the permit process. Rather, the Court holds only that the facts of the instant case are such as to amount to an unreasonably difficult, if not impossible, application process.

requirement between any two adult businesses, thereby preventing such businesses from clustering within a given area. The number of sites available to adult businesses under the ordinance, therefore, depends not so much on the total amount of acreage available under the zoning scheme, but on how that acreage is dispersed throughout the City.

*Id.* at 1108.

In *Walnut Properties*, the Ninth Circuit ultimately held that the ordinance in question was unconstitutional, finding that a reasonable number of alternative sites did not exist. There, the court held that, even accepting the City of Whittier's proffered number of three available alternative sites which could simultaneously exist, *id.*, "the paucity of alternative sites is glaring." *Id.* at 1109. The Ninth Circuit ultimately noted that, "[t]o hold, as the City urges, that there are adequate alternatives available for expression of this sort would make a mockery of First Amendment protections and would render meaningless the Supreme Court's admonition that an ordinance must not 'effectively den[y] ... a reasonable opportunity to open and operate an adult theater within the city.'" *Id.*, citing *Renton*, 475 U.S. at 53–54, 106 S.Ct. at 931–32.[3]

The circumstances in the instant case are remarkably similar. The fact that there may be four sites which can exist simultaneously in the instant case as opposed to three is immaterial, given the Ninth Circuit's finding that three sites in the City of Whittier amounted to a "glaring" constitutional violation. Hence, while it is true that there is no "constitutional minimum" as a matter of general law, it is also true that, in conducting the case by case analysis which the Supreme Court prescribes, the clear result in the instant case, in light of Ninth Circuit precedent, is that the existence of four potential sites which could simultaneously operate in the City of Simi Valley, simply does not amount to a reasonable number of alternative means of communication. On this basis alone, then, the existing ordinance violates the First Amendment.

For the foregoing reasons, the Court hereby GRANTS plaintiff's motion for declaratory and injunctive relief. Specifically, it is hereby ordered that defendant City of Simi Valley is permanently enjoined from enforcing its current zoning scheme with respect to the distance and buffer zone requirements currently in effect for adult theaters, as discussed herein. Furthermore, it is hereby declared that said zoning scheme violates the First Amendment to the United States Constitution, both on its face and as applied by the City of Simi Valley, as discussed herein.

IT IS SO ORDERED.

---

**3.** In an earlier summary judgment motion prior to trial, defendant sought to distinguish *Walnut Properties* on the basis that *Walnut Properties* concerned an ordinance which would apply retroactively to existing theatres. (*See* Reply to Summary Judgment Motion at 8). While it is true that *Walnut Properties* clearly factored in the ordinance's retroactive effect in ultimately finding the ordinance unconstitutional, *Walnut Properties*, 861 F.2d at 1110, the court did not rely upon the ordinance's retroactivity in choosing the other factors to weigh in the balance. Specifically, the Court did not rely upon the ordinance's retroactive effect in determining what amounted to an "unreasonable number of alternative sites." Hence, the court's statements with regard to the importance of determining the total number of sites that could simultaneously exist under the ordinance were in no way dependent upon the fact that the ordinance would have a retroactive effect.