**UNIVERSITY BOOKS AND VIDEOS, INC., d/b/a University Books, et al. Plaintiffs,**

v.

**METROPOLITAN DADE COUNTY, Defendant.**

Nos. 96–0952–Civ., 96–0962–Civ., 96–0995–Civ., 96–0996–Civ., 96–1141–Civ., 96–1143–Civ., 96–1337–Civ., 96–1338–Civ. and 96–1339–Civ.

United States District Court,
S.D. Florida.

Jan. 19, 1999.

See also, 930 F.Supp. 1534.

Clyde DeWitt, Los Angeles, CA, Luke Charles Lirot, Tampa, FL, Daniel Aaronson, Ft. Lauderdale, FL, Joseph Lopez, Coral Gables, FL, Barry Halpern, Coral Gables, FL, Stephen Cody, Miami, FL, for plaintiffs.

John McInnis, David Hope, Assistant County Attorney, Dade County Attorney, Miami, FL, for defendant.

### ORDER GRANTING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION

KING, District Judge.

THIS CAUSE comes before the Court on the Motion For Preliminary Injunction and Memorandum Of Law filed by Plaintiffs University Books & Videos, Inc., 14907 SN Corporation, and Bird Street Corporation on November 10, 1998 ("Plaintiffs' Motion/Memorandum A"). Plaintiffs Perrine Books and Videos, Inc., Sun Beach Videos, Inc., Kendall Book and Video, Inc., and John Doe filed a separate Motion For Preliminary Injunction and Memorandum Of Law on November 13, 1998 ("Plaintiffs' Motion/Memorandum B").[1] On December 11, 1998, with the Court's permission, Defendant Metropolitan Dade County submitted a single memorandum in response to Plaintiffs' Motions. The first group of Plaintiffs replied to Defendant's memorandum on December 16, 1998; the second group of Plaintiffs replied on December 18, 1998.[2]

### I. Factual and Procedural Background

On January 16, 1996, the Board of County Commissioners ("Commissioners") of Metropolitan Dade County ("County") enacted two

---

1. Other Plaintiffs in this consolidated case filed motions to adopt one or both of Plaintiffs' Motions For Preliminary Injunction. *See* Mot. of Pl. Miami Factor, Inc. To Adopt, Dec. 9, 1998 (adopting both Motions); Mot. of Pls. 11711 Book and Video Corp. and 2316 Corp. To Adopt, Nov. 30, 1998 (adopting Plaintiffs' Motion A); Mots. of Bird Road Book and Video, 7351 XZ, Inc., and Mr. Oliver, Inc. To Adopt, Nov. 20 and 23, 1998 (adopting both Motions). This Court granted Plaintiffs' Motions To Adopt in an Order dated January 19, 1999.

2. Both sets of Plaintiffs requested hearings on their Motions For Preliminary Injunction. Plaintiffs University Books & Videos, Inc., 14907 SN Corporation, and Bird Street Corporation submitted their request on November 19, 1998, and Plaintiffs Perrine Books and Videos, Inc., Sun Beach Videos, Inc., Kendall Book and Video, Inc., and John Doe submitted theirs on November 13, 1998. In addition, all of the Plaintiffs filed a joint request for a hearing on December 11, 1998. This Court denied Plaintiffs' requests in an Order dated January 19, 1999.

ordinances relating to adult entertainment establishments. Ordinance 96–13 (the "Regulatory Ordinance"), which was to become effective on March 16, 1996, imposes criminal and civil sanctions for sexual activity at adult bookstores and adult video stores, in order to curb the spread of the human immunodeficiency virus ("HIV"), acquired immune deficiency syndrome ("AIDS"), and other sexually transmitted diseases. *See* Metropolitan Dade County Ordinance No. 96–13 (Jan. 16, 1996). Before this case was removed to federal court, a state court temporarily enjoined the County from enforcing the Regulatory Ordinance. *See* Order Vacating Stay, June 17, 1998, at 5. Defendant appealed this Court's decision not to dissolve that injunction. *See id.* In an unpublished decision entered November 17, 1998, the Eleventh Circuit Court of Appeals held that, because the parties had stipulated to the state court's entry of the preliminary injunction and had not moved this Court to withdraw that stipulation, the injunction remained in force. *See University Books & Videos, Inc. v. Miami–Dade County,* No. 97–4101, 1998 WL 819870 (11th Cir. Nov. 17, 1998). Because it is already subject to a preliminary injunction preventing its enforcement, the Regulatory Ordinance is not at issue in Plaintiffs' Motions For Preliminary Injunction.

Ordinance 96–12 (the "Zoning Ordinance"), passed concurrently with the Regulatory Ordinance and codified at Miami–Dade County Code ("Code") § 33–255.1, became effective on January 26, 1996. In order to reduce the adverse secondary effects believed to be caused by certain specified adult entertainment establishments[3] in residential areas and public facilities frequented by children,[4]

the Zoning Ordinance limits the unincorporated areas in the County where such businesses legally may operate. *See* Code § 33–255.1(a), (b). Under the Zoning Ordinance, new adult entertainment establishments are permitted only in the BU–3 zone,[5] *see* Code § 33.255.1(c), and must comply with the following distance and spacing restrictions:

> *Unless approved as a special exception,* none of the uses set forth in subsection 33–255.1(c) shall be permitted (i) within one thousand (1,000) feet of a private school as defined in Section 33–151.11, public school, church, public park, public library, day care center or nursery for children; (ii) within one thousand (1,000) feet of any of the uses *described in subsection 33–255.1(c);* and (iii) within six hundred sixty (660) feet of any RU or EU zoning district....

Code § 33–255.1(d) (emphasis added); *see also* Code § 33–255.1(e) (explicating how distance and spacing requirements will be measured). Unless it received a special exception, any existing adult entertainment establishment that did not satisfy the distance and spacing requirements became a nonconforming use as of January 26, 1996. *See* Code § 33–255.1(h)(1). As such, it had three years either to discontinue operations, or to seek approval from the Zoning Appeals Board ("Board") to transfer to a site in a BU–3 or IU zoning district that satisfies the distance and spacing requirements. *See id.* Alternatively, the nonconforming adult entertainment establishment could apply for a variance from the Department of Planning, Development, and Regulation ("Department"). *See* Code § 33–255.1(h)(3).

---

**3.** Certain kinds of the following establishments are covered by the Zoning Ordinance: (1) adult bookstores, (2) adult theaters, (3) adult night clubs, (4) adult video stores, (5) massage establishments, (6) adult modeling establishments, (7) encounter studios. *See* Code § 33–255.1(b).

**4.** In the Zoning Ordinance, the Commissioners explained their purpose as follows:

In the development and enforcement of this ordinance it is recognized that there are uses which because of their very nature are recognized as having serious objectionable characteristics, particularly when several of them are concentrated in any given location, thereby having a deleterious effect upon the adjacent

business and residential areas. It is desirable, therefore, to locate these adult oriented activities away from residential areas and public facilities used frequently by minors such as schools, churches, parks, libraries, and day care centers.

Code § 33–255.1(a).

**5.** The BU–3 zone is designed "to provide for large-scale commercial activities." Code § 33–254. BU–3 zones allow for more uses than any other zone within the County, including all business uses permitted in the other (BU–1, BU–1A, and BU–2) zones, *see* Code § 33–255(1), and other more intensive commercial uses. *See, e .g.,* Code § 33–255(2), (3), (11).

Plaintiffs operate adult bookstores and adult video stores in unincorporated areas of the County. *See* Compl., at ¶ 26; *see also* Decls. of Robert Beck, Maria D. Hernandez, Robert Keeler, and Barbara S. Zcazwinski. If they are not granted a special exception or variance, the Zoning Ordinance allegedly will require Plaintiffs to seek approval to move their businesses to a very limited number of parcels in BU–3 zones that are over 660 feet from the nearest residential neighborhood and over 1000 feet from the nearest school, church, public facility, and other adult entertainment establishment. *See id.* at ¶ 36. In order to prevent this, Plaintiffs have sued the County,[6] seeking a declaration that the Zoning Ordinance is unconstitutional, and a permanent injunction prohibiting the County from enforcing it. *See id.* at ¶ 24A. In their Motions, Plaintiffs are seeking preliminary to enjoin the County from enforcing the Zoning Ordinance on or after its effective date of January 26, 1999 through the time when a final judgment has been reached in this case. *See* Pls.' Mot. A, at 5; Pls.' Mot. B, at ¶ 21.

## II. Legal Standard

■ To prevail on a motion for preliminary injunction, the plaintiff must establish that: (1) there is a substantial likelihood of success on the merits of its claim(s); (2) it will suffer irreparable harm in the absence of injunctive relief; (3) the threatened injury to the plaintiff outweighs any potential harm to the defendant as a result of the injunction; and (4) granting the injunction would not be adverse to the public interest. *See Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1516–17 (11th Cir.1997). The plaintiff bears the burden clearly to establish each of the four elements. *See Cafe 207, Inc. v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir.1993); *see also Anheuser–Busch, Inc. v.*

**6.** By this Court's previous Order, Plaintiffs have the following three surviving claims:

 (1) a violation of 42 U.S.C. § 1983 on the basis that the Zoning Ordinance violates Plaintiffs' right to freedom of speech and expression, as guaranteed by the First and Fourteenth Amendments of the United States Constitution;

 (2) a violation of 42 U.S.C. § 1983 on the basis that the Zoning Ordinance violates Plaintiffs' right to equal protection, as guaranteed by the Fourteenth Amendment of the United States Constitution, by denying only businesses that sell a particular kind of speech the ability

*A–B Distribs., Inc.*, 910 F.Supp. 587, 589 (M.D.Fla.1995). Whether or not to issue a preliminary injunction is a decision firmly within the discretion of the trial court. *See Virginian Ry. Co. v. System Fed'n, R.E.D.*, 300 U.S. 515, 551, 57 S.Ct. 592, 81 L.Ed. 789 (1937).

## III. Analysis

■ Plaintiffs allege claims under the First and Fourteenth Amendments of the United States Constitution and Article I, Section 4 of the Florida Constitution. *See* Fourth Am. Compl., at ¶¶ 41–72. The preliminary injunction will issue if Plaintiffs can satisfy their burden with respect to any one of these claims. In light of the arguments presented to this Court in the Parties' Memoranda, the Court will apply the four-part test for the issuance of a preliminary injunction only to Plaintiffs' First Amendment claim.

### A. *Plaintiffs' Likelihood of Success on the Merits*

■ The First Amendment protects non-obscene, sexually explicit speech. *See Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). Courts subject content-based restrictions on protected speech— those that "suppress, disadvantage, or impose differential burdens upon speech because of its content"—to "the most exacting scrutiny." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). In contrast, content-neutral regulations of protected speech, which are less likely to expunge a given category of speech from public dialogue, are subject to intermediate scrutiny. *See Clark v.*

to continue operating as lawful nonconforming uses within the County; and

 (3) a violation of Article I, Section 4 of the Florida Constitution on the basis that the Zoning Ordinance's requirement that each adult entertainment establishment either obtain a variance, special exception, or approval in order to continue operating, or move to a newly-zoned, designated district constitutes an unlawful prior restraint on speech.

*See* Fourth Am. Compl., at ¶¶ 41–72; *see also* Order Granting In Part and Denying In Part Def.'s Mot. To Dismiss, Dec. 21, 1998.

*Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). To determine whether a given regulation that potentially limits speech is content-based or content-neutral, courts look primarily to the respective government's purpose in enacting the regulation. *See Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

■ Although they differentiate between uses that are sexually explicit in nature from those that are not, zoning regulations that limit the areas in which adult entertainment establishments may locate are reviewed as content-neutral regulations. *See City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 48–50, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *see also Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 62–63, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Because they are intended primarily to curb the adverse secondary effects such establishments are believed to have on the surrounding communities, such zoning ordinances have been held to be valid exercises of the municipality's police power, notwithstanding the incidental burden they may have on protected speech. *See id.*

The Zoning Ordinance does not prohibit adult entertainment establishments from operating, rather it restricts the sites at which they may operate. *See* Code § 33–255.1(c), (d), (e). The Commissioners passed the Zoning Ordinance on the basis of their belief that adult entertainment establishments have "a deleterious effect upon the adjacent business and residential areas." Code § 33–255.1(a). Given the Commissioners' express intention of imposing the distance and spacing requirements in order to curb the adverse secondary effects believed to be caused by adult entertainment establishments, the Zoning Ordinance most likely is a content-neutral regulation. As such, its constitutionality most likely will be analyzed under *Renton* and its progeny.

■ In order to pass constitutional muster, a zoning ordinance that imposes distancing and spacing requirements on adult entertainment establishments must (1) serve a substantial governmental interest and (2) allow for reasonable alternative avenues of communication. *See Renton,* 475 U.S. at 50, 106 S.Ct. 925. In addition, as the Eleventh Circuit has noted, Supreme Court precedents both before and after *Renton* dictate that content-neutral regulations be narrowly tailored in their chosen method for achieving the legitimate government interest.[7] *See International Eateries of Amer., Inc. v. Broward County, Fla.,* 941 F.2d 1157, 1162 (11th Cir.1991), *citing Rock Against Racism,* 491 U.S. at 795–802, 109 S.Ct. 2746, *Frisby v. Schultz,* 487 U.S. 474, 483–88, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), *Community for Creative Non–Violence,* 468 U.S. at 293–96, 104 S.Ct. 3065, *Heffron v. International Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 654, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). In order to determine whether Plaintiffs have a substantial likelihood of prevailing on the merits of their First Amendment claim, the Court will analyze the extent to which the Zoning Ordinance satisfies each of these three constitutional requirements.

### 1. *Substantial Government Interest*

In *Renton,* the Supreme Court held that the city's interest in preserving the quality of urban life by attempting to curb the adverse secondary effects of adult entertainment establishments was substantial enough to justify its restrictive zoning ordinance. *See Renton,* 475 U.S. at 50, 106 S.Ct. 925, *quoting Young,* 427 U.S. at 71, 96 S.Ct. 2440.

In their Motions, Plaintiffs do not dispute that the Commissioners sought to advance a substantial government interest in passing the Zoning Ordinance. Given that the County expressly stated its interest in circumscribing the adverse secondary effects of adult entertainment establishments, *see* § 33–255.1(a), this Court will confer on the County's finding the high respect it is due. *See Renton,* 475 U.S. at 50, 106 S.Ct. 925, *quoting Young,* 427 U.S. at 71, 96 S.Ct. 2440.

7. As the Eleventh Circuit noted, the *Renton* court by no means excluded consideration of this third factor. *See Broward County,* 941 F.2d at 1162. In fact, in upholding the constitutionality of the city's ordinance, the Court expressly concluded that the method chosen by the city indeed was narrowly tailored to further what the Court already had held was a substantial government interest. *See Renton,* 475 U.S. at 52, 106 S.Ct. 925.

Accordingly, the Zoning Ordinance most likely satisfies the constitutional requirement that content-neutral regulations serve a substantial government interest.

### 2. *Narrowly Tailored To Serve Substantial Government Interest*

 In reviewing content-neutral regulations, courts play only a limited role in reviewing the method employed by the respective government to meet its substantial interest. *See Renton,* 475 U.S. at 52, 106 S.Ct. 925, *citing Young,* 427 U.S. at 71, 96 S.Ct. 2440. Rather than undertake an exhaustive evaluation of the wisdom of the city's decision, the *Renton* court held that the zoning ordinance was narrowly tailored in that its effect was limited only to the businesses specifically found to produce adverse secondary effects—adult entertainment establishments. *See id.* In other words, as long as the spacing and distance requirements mandated by such a restrictive zoning ordinance are not any greater than what is necessary to curb such secondary effects, they are narrowly tailored to advance the government's legitimate substantial interest. *See Broward County,* 941 F.2d at 1163.

In this case, the Zoning Ordinance's requirement that adult entertainment establishments not operate within one thousand (1,000) feet of a private school, public school, church, public park, public library, day care center or nursery for children is virtually identical to the city ordinance deemed sufficiently narrowly tailored by the *Renton* court. The Zoning Ordinance's requirement that adult entertainment establishments not operate within one thousand (1,000) feet of one another has been held to be narrowly tailored by other courts. *See, e.g., Holmberg v. City of Ramsey,* 12 F.3d 140, 142, 144 (8th Cir.1993). The Commissioners seem to have limited the effect of the Zoning Ordinance to those adult entertainment establishments specified in section 33–255.1(c), which they had determined to have adverse secondary effects in section § 33–255.1(a). As such, the Zoning Ordinance likely is narrowly tailored to serve the substantial government interest.

### 3. *Reasonable Alternative Avenues Of Communication*

 In propounding the third requirement for ordinances that restrict the number of potentially available sites on which adult entertainment establishments may locate to satisfy in order to withstand constitutional scrutiny, the *Renton* court did not establish any bright-line rule for measuring whether a given ordinance provides such establishments with a reasonable opportunity to operate within the given jurisdiction. *See Young v. City of Simi Valley,* 977 F.Supp. 1017, 1019 (C.D.Cal.1997) (noting that "there is no constitutional 'minimum' number of sites as general law"). As such, a court reviewing such an ordinance must determine whether the number of sites that potentially could exist under the ordinance is reasonable, given the characteristics of the city or county being regulated. *See id.; Dia v. City of Toledo,* 937 F.Supp. 673, 678 (N.D.Ohio 1996).

 In making this determination, a key issue is whether the number of sites left open for adult entertainment establishments are potentially available to them. *See Renton,* 475 U.S. at 54, 106 S.Ct. 925. *Renton* does not require cities and counties effectively to guarantee that adult entertainment establishments will be able to continue doing business by zoning them to areas likely to promote or sustain their economic vitality; rather, *Renton* requires cities and counties to provide adult entertainment establishments with reasonable access to a real estate market on which commercial businesses generally may locate. *See Renton,* 475 U.S. at 54, 106 S.Ct. 925 ("That respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation.... [T]he First Amendment requires only that Renton refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city...."); *see also Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524, 1530 (9th Cir.1993). This holding appears to have the following two corollaries: (1) land that is physically or legally unavailable for commercial development generally is not considered potentially

available, *see Los Angeles*, 989 F.2d at 1530; *Woodall v. City of El Paso*, 49 F.3d 1120, 1124 (5th Cir.1995), and (2) the potential for an adult entertainment establishment's success either in obtaining a site in the commercial real estate market, or in generating enough revenue to remain commercially feasible at that site, is irrelevant for First Amendment purposes. *See Renton*, 475 U.S. at 54, 106 S.Ct. 925 *quoting Young*, 427 U.S. at 78, 96 S.Ct. 2440.

In a study prepared by the Department and given to Plaintiffs pursuant to a discovery request, the County identified only ten (10) BU–3 zoned parcels in all of the unincorporated area that would fully comply with the distance and spacing requirements of the Zoning Ordinance.[8] *See* Study on Proposed Spacing For Adult Entertainment Establishments, at 1; *see also* Dep. of Diane O'Quinn Williams, at 11–12, 22–33. These 10 sites cover 22.59 acres. *See* Decl. of Steve Miller, at ¶ 51. Since unincorporated Dade County occupies 1,152,540 acres, *see* Def.'s Resp. to Interrog. No. 12, these ten BU–3 parcels constitute approximately 0.002% of unincorporated Dade County.

Courts "have generally found the number [of sites] to be inadequate if fewer than a dozen sites, or under 1% of the city acreage, is potentially available." *Toledo*, 937 F.Supp. at 678 (citations decisions, both those declaring the relevant ordinance constitutional and those deeming it unconstitutional, Plaintiffs likely would succeed on the merits of their claim that the ten parcels left open by the Zoning Ordinance, representing 0.002% of the County's total acreage, does not provide them with a reasonable opportunity to access alternative avenues of communication.

As the court in *Walnut Properties, Inc. v. City of Whittier* noted, a court reviewing a restrictive zoning ordinance should consider how the total amount of acreage left open to adult entertainment establishments is dispersed throughout the relevant city or county. *See Whittier*, 861 F.2d 1102, 1108 (9th Cir.1988); *see also El Paso*, 49 F.3d at 1125. Given both the concentration of the potentially available BU–3 parcels[9] and the Zoning Ordinance's requirement that adult entertainment establishments be at least 1,000 feet away from one another, *see* § 33–255.1(d), only one, two, or possibly three such establishments likely would be able simultaneously to exist within the ten parcels of unincorporated Dade County left open by the Zoning Ordinance. *See* Dep. of Guillermo Olmedillo, at 28; Dep. of Williams, at 25; *see also Whittier*, 861 F.2d at 1108, n. 4 (noting that 1,000 feet dispersal requirement causes opening of one adult entertainment establishment to disqualify the surrounding 72 acres). In its memorandum in opposition to Plaintiffs' Motions, Defendant does not contest Plaintiffs' conclusion. Although the Court notes that the evidence before it at this time supports Plaintiffs' argument, it will continue to use the County's characterization of ten sites, given that Plaintiffs bear the burden on a motion for preliminary injunction. *See Cafe 207*, 989 F.2d at 1137.

To demonstrate further the extent to which the Zoning Ordinance does not leave open reasonable alternative avenues for Plaintiffs to communicate their message, the Court examines the relationship between the number of sites potentially available for adult entertainment establishments and the population of unincorporated Dade County. *See*

8. The fact that incorporated cities within the County, such as Miami or Coral Gables, may provide adult entertainment establishments does not weaken Plaintiffs' case. As the Supreme Court held in *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 77, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), "[O]ne is not to have the exercise of his liberty of expression in appropriate places abridge on the plea that it may be exercised in some other place." As Plaintiffs correctly point out, in enunciating the test for speech-restrictive zoning ordinances, the *Renton* court held that such ordinances must allow for "a reasonable opportunity to open and operate an adult theater *within the city*." Pls.' Mem. A, at 10, *citing Renton*, 475 U.S. at 54, 106 S.Ct. 925 (emphasis

added). Furthermore, other cases have held that, where a county passes a zoning ordinance such as this one that applies only to its unincorporated areas, the adult entertainment establishments must have reasonable access to alternative avenues of communication within the county's unincorporated areas. *See, e.g., Broward County*, 941 F.2d at 1165.

9. All ten parcels allegedly are located on Northwest 36th Street, just east of the Palmetto Expressway. *See* Pls.' Mot. B, at ¶ 6. Five of the parcels allegedly are located adjacent to one another on the street's north side, and the other half allegedly are located side-by-side on the street's south side. *See id.*

*Chicago,* 874 F.Supp. at 896. According to the County, as of August 11, 1998, the population of unincorporated Dade County was 1,118,600. *See* Def.'s Resp. to Interrog. No. 18. Assuming even that the Zoning Ordinance were to allow for ten adult entertainment establishments, this would amount to only one such business for every 111,860 inhabitants of unincorporated Dade County. Restrictive zoning ordinances that provide for one adult entertainment establishment for a far lower number of residents—yielding a higher proportion—indeed have been upheld. *See Broward County,* 941 F.2d at 1165 (holding ordinance that left open 26 sites for adult entertainment establishments in county of over one million, *see International Eateries of Amer., Inc. v. Broward County,* 726 F.Supp. 1568, 1571 (S.D.Fla.1989), or approximately 1 such business for every 38,462 residents, to be constitutional); *Boynton Beach,* 736 F.Supp. 1094, 1101 (S.D.Fla.1990) (one adult business for every 4,091 residents found reasonable). Notably, however, a proportion far smaller was deemed unconstitutional in *Centerfold Club v. City of St. Petersburg,* 969 F.Supp. 1288, 1306 (M.D.Fla.1997) (rendering unconstitutional ordinance that would allow for only one adult business for every 12,526 city residents). Given how low the number of adult entertainment establishments would be given the population of unincorporated Dade County when compared to other restrictive zoning ordinances, Plaintiffs are likely to prevail on the merits of their claim that the Zoning Ordinance does not leave open reasonable alternative avenues of communication.

In light of other cases undertaking a supply-demand analysis to determine the constitutionality of a restrictive zoning ordinance, the Court will examine whether the sites left open to Plaintiffs would be adequate to satisfy their demand to operate such establishments. *See El Paso,* 49 F.3d at 1126; *see also Jackson,* 973 F.2d at 1260 (holding that ordinance would result in more than six potentially available sites, which could accom-

modate the six existing businesses demanding them). Plaintiffs currently own and/or operate twenty of the approximately thirty adult entertainment establishments operating in unincorporated Dade County.[10] *See* Pls.' Mem. A, at 13, n. 11. Assuming that Plaintiffs would not continue to operate their businesses if there were not demand sufficient to support them, the ten sites that Defendant alleges will be open if the Zoning Ordinance were to go into effect likely would be insufficient to meet the demand by Plaintiffs for them. Under this supply-demand analysis as well, Plaintiffs are likely to succeed on the merits of their claim that the Zoning Ordinance fails to satisfy the constitutional requirement of allowing for reasonable alternative avenues of communication.

 Under the terms of the Zoning Ordinance, new adult entertainment establishments may only open on the ten BU–3 parcels, and need not seek a special exception or variance before doing so. *See* Dep. of Williams, at 26. Existing adult entertainment establishments may relocate either to a BU–3 or an IU zone that meets the distance and spacing requirements, but only if the Board approves of their request. *See* § 33–255.1(h)(1) ("During the aforementioned three-year period [following the effective date of the Zoning Ordinance], upon approval of the Zoning Appeals Board after a public hearing, any such nonconforming use which is not in compliance with Section 33–255.1(d) *may* be transferred to a site which satisfies the requirements of Section 33–255.1(d) in a BU–3 or IU zoning district.") (emphasis added); *see also* Dep. of Olmedillo, at 27–29. In other words, Plaintiffs are not guaranteed access to the limited number of alternative avenues of communication. Rather than being able to relocate as a matter of right, Plaintiffs must apply for the Board's approval to relocate, which may be granted or denied at the Board's discretion. *See id.* Plaintiffs other alternatives—seeking a special exception or variance, *see* § 33–255.1(d),

---

**10.** On December 18, 1998, six other adult entertainment establishments operating in unincorporated Dade County moved to intervene in Plaintiffs' case. *See* Mot. To Intervene of Kendall Book and Video, Inc., Sun Beach Video, Inc., Gold Coast Book and Video, Inc. d/b/a Adult

Video City, 167th Street Corp. d/b/a 167th Street Book and Video, James T. Robinson d/b/a The Booby Trap Lounge, and MPB., Inc. d/b/a Gatorkicks. This Court granted the Interveners' Motion in an Order dated January 15, 1999.

(h)(3)—also require discretionary approval by the Board and/or the Department, after public notice to surrounding landowners and a public hearing. *See* Dep. of Olmedillo, at 84; Dep. of Williams, at 27–28, 61–62. Plaintiffs argue that the County's discretionary zoning approval process violates the prior restraint doctrine, which applies to licensing schemes that regulate an entire business that incidentally suppresses speech. *See FW/ PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225–26, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Such schemes are presumptively unconstitutional unless they contain the following two procedural safeguards to impede the risk of censorship: (1) any restraint prior to a judicial determination is for a specified brief time, and (2) an avenue for prompt judicial review is available. *See id.* at 229, 110 S.Ct. 596. In addition, the licensing authority must be guided by objective standards that limit its unfettered discretion. *See id.* at 225–26, 110 S.Ct. 596.

The Court does not find it necessary at this time to determine whether the Zoning Ordinance satisfies the due process standards set out in *FW/PBS.* The County cannot rely on the *potential* for discretionary approvals of special exceptions and/or variances to raise the number of alternative avenues of communication from the ten parcels found likely to be unreasonable by this Court. Nothing prevents the Board and/or Department from exercising its discretion to reject every single application for special exception or variance made by operators of adult entertainment establishments. Defendant certainly cannot guarantee that the number of sites potentially available to Plaintiffs will be any greater than the ten parcels identified in its own study; as such, this Court will make its determination of Plaintiffs' likelihood of success on the merits of their First Amendment claim based upon the ten parcels identified by the County. That the Zoning Ordinance ultimately may provide Plaintiffs with more potentially available sites, through special exceptions or variances, is of no consequence at this stage of the proceeding.

Plaintiffs have sufficiently demonstrated a substantial likelihood of prevailing on the merits of their First Amendment claim, thereby satisfying the first requirement for issuance of a preliminary injunction.

**B.** *Injury to Plaintiffs in Absence of Injunctive Relief*

The Supreme Court has held that any loss of First Amendment freedoms, even for a brief amount of time, is sufficient to constitute the irreparable injury necessary to justify the issuance of a preliminary injunction. *See Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Because chilled speech cannot be compensated by monetary damages, an ongoing violation of the First Amendment constitutes irreparable injury. *See Northeastern Fla. Chapter of Association of Gen. Contractors of Amer. v. City of Jacksonville, Fla.,* 896 F.2d 1283, 1285 (11th Cir.1990).

If the Zoning Ordinance were to become effective and ultimately be ruled unconstitutional under the First Amendment, Plaintiffs will have been deprived of their right to free speech from the effective date through entrance of that final judgment. Plaintiffs have sufficiently demonstrated that, in the absence of a preliminary injunction, their speech would be chilled and they thereby would suffer irreparable injury.

**C.** *Balance of Plaintiffs' Injury and Harm to Defendant*

As the *Renton* court recognized, a municipality's legitimate interest in attempting to preserve the quality of urban life must be accorded high respect. *See Renton,* 475 U.S. at 50, 106 S.Ct. 925, *quoting Young,* 427 U.S. at 71, 96 S.Ct. 2440. Temporarily enjoining the County from enforcing the Zoning Ordinance harms Defendant in that it is unable to serve what this Court already has determined is a substantial government interest. This Court cannot easily compare this harm to Plaintiffs' irreparable injury from the deprivation of their First Amendment freedoms. However, given that the Zoning Ordinance has not yet gone into effect, enjoining it from becoming effective until final judgment has been reached in this case merely preserves the status quo. Furthermore, since this Court will have a trial on this matter within the next few months, any delay to the achievement of Defendant's objectives

will be short-lived. Although balancing the hardships to the parties is particularly difficult in this case, the Court concludes that the potential for irreparable injury to Plaintiffs outweighs the reparable harm to Defendant.

### D. *Public Interest*

 The public interest always is served when constitutional rights, especially free speech, are vindicated. *See Toledo,* 937 F.Supp. at 679, *citing Christy v. Ann Arbor,* 824 F.2d 489, 491 (6th Cir.1987); *see also Doe v. Duncanville Indep. School Dist.,* 994 F.2d 160, 166 (5th Cir.). Plaintiffs seek a preliminary injunction in order to ensure that Defendant does not unconstitutionally trample upon their First Amendment freedoms.[11] As such, Plaintiffs have satisfied the fourth requirement for issuance of a preliminary injunction by demonstrating that doing so would serve the public interest.

### E. *Security*

 Federal Rule of Civil Procedure 65(c) mandates that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c) (West 1998). Whether or not to require a bond in any particular case—and the amount of any such bond demanded—is within the discretion of the trial judge. *See USACO Coal Co. v. Carbomin Energy, Inc.,* 689 F.2d 94, 100 (6th Cir.1982); *Roth v. Bank of the Commonwealth,* 583 F.2d 527, 539 (6th Cir. 1978). As Plaintiffs correctly point out, courts have held that security is not required in the following circumstances: (1) when the party seeking the injunction has a high probability of succeeding in the merits of its claim, *see, e.g., People ex rel. Van De Kamp v. Tahoe Reg. Planning Agency,* 766 F.2d 1319, 1326 (9th Cir.1985); (2) when the party to be enjoined is a municipality or county

government that likely would not incur any significant cost or monetary damages from the issuance of the injunction, *see, e.g., United States v. State of Ore.,* 675 F.Supp. 1249, 1253 (D.Or.1987); (3) when demanding a bond from the party seeking the injunction would injure the constitutional rights of the party or the public, *see, e.g., Smith v. Board of Election Comm'rs for Chicago,* 591 F.Supp. 70, 71–72 (N.D.Ill.1984). All three of the above circumstances apply at least in part in this case. As such, the Court will not demand that Plaintiffs provide any security for the issuance of this preliminary injunction.

### IV. Conclusion

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that the Motion For Preliminary Injunction filed by Plaintiffs University Books & Videos, Inc., 14907 SN Corporation, and Bird Street Corporation on November 10, 1998 and the separate Motion For Preliminary Injunction filed by Plaintiffs Perrine Books and Videos, Inc., Sun Beach Videos, Inc., Kendall Book and Video, Inc., and John Doe on November 13, 1998 be, and the same are hereby, GRANTED. Until final judgment in this matter, Defendant Metropolitan Dade County and its officers, agents, servants, employees, and attorneys are ENJOINED from in any way enforcing Dade County Ordinance 96–12, codified at Miami–Dade County Code § 33–255.1, against Plaintiffs and their officers, agents, servants, employees, and attorneys.

DONE and ORDERED in chambers at the James Lawrence King Federal Justice Building and United States District Courthouse, Miami, Florida, this 19th day of January, 1999.

---

11. The Court notes that the First Amendment protects not only speakers, but also members of the public interested in receiving communications that are protected by the First Amendment. *See Chicago,* 874 F.Supp. at 895–96. Temporarily enjoining the enforcement of the Zoning Ordinance also serves those members of the public who choose to patronize Plaintiffs' businesses. Those members of the public who object to Plaintiffs' sexually-explicit speech may continue exercising their right not to patronize Plaintiffs' businesses.