**Philip YOUNG, Plaintiff–Appellee,**

v.

**CITY OF SIMI VALLEY,
Defendant–Appellant.**

No. 97–56484.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 27, 1999

Filed June 20, 2000

Bert H. Deixler, Proskauer Rose, Los Angeles, California, for the defendant-appellant.

Roger Jon Diamond, Santa Monica, California, for the plaintiff-appellee.

Before: FERGUSON, O'SCANNLAIN, and TASHIMA, Circuit Judges.

Opinion by Judge TASHIMA; Partial Concurrence and Partial Dissent by Judge O'SCANNLAIN.

TASHIMA, Circuit Judge:

The City of Simi Valley ("Simi Valley" or the "City") appeals from the district court's order declaring its adult business zoning ordinance unconstitutional and granting an injunction barring its enforcement. We must decide two issues: whether a zoning ordinance that allows "sensitive use" [1] establishments to apply for an over-the-counter zoning clearance and disqualify a pending adult use permit is constitutional; and whether the existence of four potential, simultaneously available adult use sites in a city where only one

**811**

application is pending is sufficient to provide alternative avenues of communication under the test set forth in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's judgment that the ordinance is unconstitutional, albeit on a narrower ground.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Simi Valley, located approximately 35 miles northwest of Los Angeles, has a population of slightly over 100,000 residents and occupies 34 square miles in area. There has never been an adult business in Simi Valley. In 1978, Simi Valley adopted its first zoning ordinance regulating the location of adult businesses; however, a federal court found the ordinance unconstitutional.[2] Thereafter, in or around 1988, Simi Valley officials began drafting another zoning ordinance to regulate adult businesses within the City.

In late 1992, before a new ordinance was adopted, appellee Philip Young put a $20,000 down payment on a property at 999 Los Angeles Avenue for the purpose of opening an adult business and he subsequently applied for an adult use zoning permit. On January 28, 1993, Young received a zoning clearance from the City, and applied for and received a business tax certificate.

On February 9, the City rescinded Young's zoning clearance and requested additional information to determine whether his proposed use was acceptable. Young submitted the requested information approximately two weeks later. In

---

**1.** Under the Simi Valley ordinance, "sensitive use" includes any "youth-oriented business" or any "public or private school, park playground, church or other place of worship, or any noncommercial establishment operated by a bona fide religious organization." Simi Valley Mun.Code § 9–1.2003(d); *see also* Simi Valley Mun.Code § 9–1.2002(m). A sensitive use disqualifies an adult use permit application if it is located within either 500 feet or 1,000 feet of the prospective adult use site, depending on the particular sensitive use involved.

**2.** The reason that the first adult use zoning ordinance was declared unconstitutional is unclear from the record.

the interim, however, the City had adopted Ordinance No. 791, an emergency ordinance which adopted a moratorium on all adult uses throughout the City. According to the testimony of the City Attorney, the moratorium was motivated, at least in part, by Young's application.

On May 3, 1993, Simi Valley adopted Ordinance No. 796, a permanent zoning scheme regulating all adult businesses.[3] Under the ordinance, no adult business is permitted to locate within 500 feet of any residential zone or youth-oriented business,[4] within 1,000 feet of any other adult business, or within 1,000 feet of any "public or private school, park playground, church or other place of worship, or any noncommercial establishment operated by a bona fide religious organization." Simi Valley Mun.Code § 9–1.2003(d). Additionally, before one may open or expand an adult business, the applicant is required to obtain a special use permit, which may take from several months to a year to obtain. *See* Simi Valley Mun.Code § 9.1–2004.

After the ordinance was passed, approximately 0.5 percent of the land within Simi Valley was available for adult business sites. Further, although there were between 35 and 120 potential adult use locations, the City conceded that, at most, only four adult use sites could be available simultaneously because of the 1,000–foot buffer zone requirement between adult establishments.

Because the new ordinance prohibited an adult business at 999 Los Angeles Avenue, Young abandoned his project and, on December 12, 1994, filed the instant lawsuit challenging the ordinance's constitutionality. While the lawsuit progressed,

Young searched for an acceptable alternate location for his proposed business. He settled upon 585 East Los Angeles Avenue. Before entering into a lease on the property, however, Young contacted Simi Valley officials to determine whether he would be permitted to open an adult business at that location. The City conducted a preliminary site inspection of the area and determined that there were no incompatible uses under the ordinance at that time. The City Attorney cautioned, however, that a final determination regarding compliance with the ordinance could be made only after specific land development plans were submitted.

Based on this favorable initial response by the City, Young entered into a lease for the property at 585 East Los Angeles Avenue for a monthly rent of $3,174 with the intention of opening an adult theater there. He applied for a special use permit to operate an adult business and he also agreed to stay the lawsuit pending the approval of his application.

After receiving comments from various city agencies, Simi Valley requested that Young provide additional information, including noise mitigation and traffic studies. Neither of these studies had been required by the original special use permit application, but Young nonetheless submitted the requested information on August 14, 1995. He was informed on September 14 that certain pieces of information were insufficient, and on November 9, Young resubmitted his plans. Throughout the process, Young was required to hire both an outside traffic engineer and a sound engineer. While the total cost of the permitting process is unclear from the record, Young spent at least $45,000 attempting to obtain

---

3. Adult businesses within the scope of the ordinance include "adult book stores, adult cabarets, adult hotels and motels, adult massage parlors, adult motion picture arcades, adult motion picture theaters, adult mini-motion picture theaters, adult video stores, model studios, and sexual encounter centers." Simi Valley Mun.Code § 9–1.2003; *see also* Simi Valley Mun.Code § 9–1.2002(a)–(j).

4. A "youth-oriented business" is defined as a business activity which "caters predominantly to on-site patronage by persons under eighteen (18) years of age ... and which is open for such business not less than twenty-five (25) hours per week." Simi Valley Mun.Code § 9–1.2002(m).

a permit to operate an adult theater on the 585 East Los Angeles property.

On December 8, 1995, exactly 30 days after Young re-submitted his plans, Simi Valley notified Young that his application was complete,[5] but denied his application because it did not comport with the buffer zone requirements. The City informed Young that the proposed site violated the ordinance in two ways.

First, the proposed site violated the 1,000-foot buffer zone around schools and noncommercial establishments operated by a bona fide religious organization. *See* Simi Valley Mun.Code § 9–1.2003(d). On December 7, 1995, the day before the City deemed Young's application complete, a newly-established religious organization, the Joshua Institute, had filed a zone clearance application to operate an adult bible study class at 665 East Los Angeles Avenue. The Joshua Institute was to meet for Bible study one hour per week, on Thursday mornings from 6:30 to 7:30 a.m., and its space was furnished only with several folding chairs. The City, having concluded that the Institute's application complied with all requirements, granted it a zone clearance the following day, on December 8, 1995.

The Joshua Institute is headed by Norman Walker, President of the Simi Valley Board of Education, Associate Pastor of the First Baptist Church in Thousand Oaks, and an admitted opponent of Young's proposed establishment. Walker testified at trial that he knew where Young intended to open his adult business and believed that opening the Joshua Institute would disqualify Young's adult business permit application.[6]

Second, a subsequent investigation of the area revealed that a karate school within 500 feet of Young's site was a "youth-oriented" business for purposes of § 9–1.2003(d). The karate school was in existence both when the City Attorney informed Young that no sensitive uses were within the site's buffer zone and when Young first applied for the zoning permit. Although Young had been aware of the karate school's existence, he did not know that it qualified as a youth oriented business, and the City never advised him of that fact at any time after its preliminary investigation of the site. The City informed Young that either the Joshua Institute or the karate studio independently would have prevented him from obtaining a special use permit for that site.[7]

On March 6, 1996, the City Planning Commission rejected Young's application. Over Young's protestations, it ruled that a proposed site's compliance with the buffer zone requirements was to be determined as of the date of the project's approval, rather than as of the date when the appli-

---

5. Under the ordinance, Simi Valley has 30 days after submission to deem an application complete. Once the application is complete, the City has 94 days to act upon the application.

6. The dissent suggests that "significant evidence" exists that Walker "had no idea" that a permit to operate the Joshua Institute would stop Young from obtaining a zoning permit. Slip op. at 825. This suggestion, however, is belied by the record. Walker testified, as follows:

> Q: Did you believe ... that your facility would disqualify Mr. Young's proposed adult theater?
> A: I didn't have any direct knowledge that it would, no.

> Q: But you answered my question not directly. You said you had no direct knowledge. I'm asking you for your belief. Did you believe on December 7th, 1995, when you obtained zoning clearance for the Joshua Institute, that that would disqualify Mr. Young's proposed adult theater?
> A: Yes, I did.
> Q: Did you believe it?
> A: Yes, I did.

Rptr's. Tr., Vol. 4, pp. 39–40.

7. In light of the City's reliance on the two alternative reasons as grounds for refusing to approve Young's special use permit application, the dissent's characterization of the application of the sensitive use veto to Young as "theoretical" and "hypothetical," slip op. at 823–24, is an inaccurate simplification of the record.

cation was filed. In any case, the Commission noted that Young's application would have been denied because the karate school was in operation when Young filed his application. Young appealed to the City Council, which affirmed the Planning Commission's decision.

In September 1996, the district court lifted the stay of Young's lawsuit, and Young amended his original complaint. Young conceded that the Simi Valley ordinance was a time, place, and manner restriction and that the City had a substantial interest in enacting an adult business zoning ordinance. Young argued, however, that under the test set forth in *Renton*, 475 U.S. at 46–50, 106 S.Ct. 925, the Simi Valley ordinance does not allow reasonable alternative avenues of communication. Simi Valley countered that its regulation was valid under *Renton*.

The case was tried to a jury in May, 1997, but the jury was unable to reach a verdict and the district court declared a mistrial.

On June 9, 1997, Young filed a renewed motion for judgment as a matter of law. The district court granted the motion based on two grounds. *See Young v. City of Simi Valley*, 977 F.Supp. 1017, 1018 (C.D.Cal.1997). The district court first concluded that the ordinance was unconstitutional because the de facto veto power given to sensitive use establishments ("sensitive use veto") [8] makes it "unreasonably difficult" for an adult use applicant to complete the permit process. *Id.* at 1020. Testimony by a City official revealed that at any point during the application process a sensitive use establishment could apply for and receive an over-the-counter zoning approval and block Young from completing his project. Discussing this feature of the ordinance, the district court stated that "a system whereby third parties can effectively nullify the few areas set aside as

'reasonable alternative avenues' " of communication is unconstitutional. *Id.*

Second, the district court found that four potential sites are not a reasonable number of alternative avenues of communication as a matter of law. *Id.* at 1021–22. The court then "permanently enjoined [Simi Valley] from enforcing its current zoning scheme with respect to the distance and buffer zone requirements currently in effect for adult theaters." *Id.* at 1022.

## II. DISCUSSION

We conclude that the challenged permitting scheme for adult businesses in Simi Valley is facially invalid under the First Amendment. The ability of private parties to obtain an over-the-counter zoning permit that effectively blocks an adult use, at *any* time during the lengthy permitting process for adult businesses, deprives a potential adult business owner of "reasonable alternative avenues of communication" as required by the Supreme Court's holding in *Renton*, 475 U.S. at 50, 106 S.Ct. 925. We do not find, however, that there is an inadequate number of permissible sites for adult businesses in Simi Valley, as a matter of law. The record simply does not demonstrate that four potential sites is insufficient in a city with the particular characteristics of Simi Valley.

### A. Standing

■ Young asserts that the ordinance is invalid both facially and as applied by Simi Valley. Since we conclude that the ordinance is facially invalid, however, we need not reach the issue of whether the statute is unconstitutional as applied to Young. We review the district court's grant of standing de novo. *See Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997).

---

8. We use the term "sensitive use veto" to refer to the ability of a sensitive use establishment, established or relocated within an adult use permit applicant's buffer zone after that

application has been filed, to disqualify that applicant by obtaining an over-the-counter zoning permit before the adult use permit application process can be completed.

■ Under the overbreadth doctrine, a plaintiff may challenge an overly-broad statute or regulation by showing that it may inhibit the First Amendment rights of parties not before the court, even if his own conduct is not protected. *See 4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1111 (9th Cir.1999); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The overbreadth doctrine is based on the observation that "the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992); *see also Lind v. Grimmer*, 30 F.3d 1115, 1122 (9th Cir.1994). Thus, the City's, and the dissent's, contention that Young cannot sustain a challenge to the ordinance based on the sensitive use veto because of the pre-existing karate studio is mistaken. In order to have standing to bring a facial challenge, Young must demonstrate only that the ordinance "create[s] an unacceptable risk of the suppression of ideas" and that he has suffered an injury. *Nunez v. City of San Diego*, 114 F.3d 935, 949 (9th Cir.1997) (quoting *Secretary of State v. Joseph H. Munson Co.*, 467 U.S. 947, 965 n. 13, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984)).

Young asserts that people will be deterred from attempting to obtain an adult use permit—and thus engage in a protected activity—because the ordinance makes the process prohibitively difficult and risky. Because, as Young contends, a sensitive use could preempt an adult establishment for *any reason* at *any time* before the approval of the adult use permit, there exists a "realistic danger that the [ordinance] itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

■ The overbreadth exception to the prudential limits on standing, however, "does not affect the rigid constitutional requirement that plaintiffs must demonstrate an injury in fact to invoke a federal court's jurisdiction." *4805 Convoy*, 183 F.3d at 1112 (quoting *Bordell v. General Elec. Co.*, 922 F.2d 1057, 1061 (2d Cir. 1991)). Rather, the exception only allows those who have suffered some cognizable injury, but whose conduct may not be protected under the First Amendment, to assert the constitutional rights of others.

Here, Young satisfies the injury-in-fact requirement. He has applied for and has been denied an adult use permit twice in Simi Valley, including once under the challenged ordinance. He spent at least $45,000 and one year attempting to obtain a permit, only to be denied at the last minute. The economic loss that Young has suffered is a cognizable injury and is sufficient to satisfy the Article III standing requirement. *See, e.g., Clinton v. City of New York*, 524 U.S. 417, 432–33, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998) ("The Court routinely recognizes [ ] economic injury resulting from governmental actions ... as sufficient to satisfy the Article III 'injury-in-fact' requirement.") (internal quotation marks and citations omitted).

## B. Sensitive Use Veto

■ The Supreme Court has held that the right to open and operate an adult theater featuring topless, exotic or nude dancing is protected by the First Amendment. *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *see also Kev, Inc. v. Kitsap County*, 793 F.2d 1053, 1058 (9th Cir.1986) ("Courts have considered topless dancing to be expression, subject to constitutional protection within the free speech and press guarantees of the first and fourteenth amendments."). While local governments have a broad power to zone and control land use for the benefit of their communities, that power must be exercised within constitutional limits. *See Schad*,

452 U.S. at 68, 101 S.Ct. 2176 (citing *Moore v. City of East Cleveland,* 431 U.S. 494, 514, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)). Those constitutional limits have been defined by the Supreme Court—and refined by the lower courts—in a series of cases in which local zoning ordinances that limited or prohibited adult businesses were challenged. *See Renton,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29; *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *see also Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524 (9th Cir.1993); *Walnut Properties, Inc. v. City of Whittier,* 861 F.2d 1102 (9th Cir.1988).

**1.**

■■ Zoning ordinances that are "designed to combat the undesirable secondary effects" of adult businesses, rather than to regulate the content of the speech itself, are reviewed under the standards applicable to "content neutral" time, place and manner regulations. *Renton,* 475 U.S. at 49, 106 S.Ct. 925; *see also Colacurcio v. City of Kent,* 163 F.3d 545, 551 (9th Cir. 1998). Where an ordinance is "justified without reference to the content of the regulated speech," it does not offend the fundamental principle that the government may not avoid the dissemination of offensive speech merely because it finds that speech unacceptable. *Renton,* 475 U.S. at 48, 106 S.Ct. 925 (quoting *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)); *see also American Mini Theatres,* 427 U.S. at 71 n. 34, 96 S.Ct. 2440.

■ We agree with the district court and the parties that the *Renton* test applies here. Simi Valley Municipal Code § 9–1.2001 states that the purpose of the ordinance is to avoid "certain objectionable side effects which render such adult businesses incompatible with residential areas, schools, places of worship, and other family and youth-oriented uses." No one disputes that the City's "predominate" intent in passing the ordinance was to "preserve the character of neighborhoods, protect the integrity of public places, and effectively meet the impacts of urbanization upon the quality of life within the City" and not to suppress the expression of unpopular views. Simi Valley Mun.Code § 9–1.2001; *see Renton* 475 U.S. at 48, 106 S.Ct. 925.

■ Under *Renton,* an adult use zoning ordinance that is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication is constitutional.[9] *See id.* at 50, 106 S.Ct. 925; *see also Crawford v. Lungren,* 96 F.3d 380, 384 (9th Cir.1996). Young does not dispute that the City's interest in preserving the quality of urban life is a substantial government interest. Rather, Young challenges the ordinance on the ground that it denies potential adult business owners reasonable alternative avenues of communication under the First Amendment. First, Young asserts that a sensitive use establishment's ability to obtain a zoning clearance within a proposed adult facility's buffer zone after its application is pending, impermissibly chills protected freedom of expression. Second, Young contends that the four locations available under the ordinance are too few to amount to a reasonable number of sites,

**9.** The First Amendment right to dance completely nude in public recently has been restricted further by the Supreme Court in *City of Erie v. Pap's A.M.,* — U.S. —, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). In *Erie,* the Court upheld an ordinance that completely banned nude dancing in all public places, including businesses open to the public. *See id.* at 1388.

Notably, however, the Court did not overrule *Renton,* and the dissent agrees that, because the Simi Valley ordinance applies to all adult businesses, it is *Renton,* not *Erie,* that controls the outcome of this case. Slip op. at 6552. Our inquiry, therefore, still is limited to whether Simi Valley's ordinance deprives a potential adult business owner of "a reasonable opportunity to own and operate an adult theater within the city," *Renton,* 475 U.S. at 54, 106 S.Ct. 925, notwithstanding the dissent's lengthy speculation of how *Erie* might be applied in a different case.

even assuming that none of the sites were defeated at the last minute by a sensitive use.

■ The dispositive question when deciding whether an ordinance leaves open adequate alternative avenues of communication is "whether the local government has effectively denied [prospective adult business owners] ... a reasonable opportunity to open and operate their enterprise within the city." *Renton*, 475 U.S. at 54, 106 S.Ct. 925; *see also Topanga Press*, 989 F.2d at 1529. What constitutes a reasonable opportunity to open and operate an adult theater is a mixed question of fact and law which we review de novo. *See Walnut Properties*, 861 F.2d at 1108.

Whether an ordinance that allows a religious organization, school, or other sensitive use establishment to prevent an adult use, at any time during the permitting process, denies a potential adult business owner a "reasonable opportunity to open and operate" his business is an issue of first impression. All of the previous cases that have defined the contours of the "reasonable alternative avenues of communication" test have focused on the geographical area or the number of sites available for adult uses, and not on the procedure by which the permit is granted or denied.

■ Importantly, however, the Court in *Renton* did not expressly limit its "reasonableness" inquiry to the number of available sites within a city. *See* 475 U.S. at 53–54, 106 S.Ct. 925. The procedure by which a city dispenses its permits may deprive potential businesses of reasonable alternative avenues of communication in the same way that a paucity of available sites would. *See Baby Tam & Co. v. City of Las Vegas*, 199 F.3d 1111, 1114 (9th Cir.2000) (*"Baby Tam II"*) (holding ordinance which set no time limit for city to act on adult bookstore's license application unconstitutional); *cf. FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 228, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (recognizing that a lack of procedural safeguards may

result in the unconstitutional suppression of protected speech). In order to provide reasonable alternative avenues of communication, a zoning ordinance that limits the ability of an adult business to operate must provide "adequate procedural safeguards necessary to ensure against undue suppression of protected speech." *Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir.1998) (*"Baby Tam I"*). While a city may adopt reasonable regulations regarding the zoning of adult theaters, such regulations must not unreasonably restrict or interfere with the right of an adult use applicant to operate within a city, regardless of how that interference is accomplished.

2.

■ We conclude that the Simi Valley ordinance, as interpreted by the City, denies an adult business owner-applicant a reasonable opportunity to open and operate an adult enterprise in Simi Valley. Significantly, the Simi Valley Planning Commission has ruled that the buffer zone requirement between adult businesses and sensitive uses must be satisfied as of the date of a project's approval, not just as of the application's filing date. It is this interpretation of the ordinance that gives rise to the sensitive use veto. It is, however, unconstitutional for a local government to impose a procedural requirement that delegates to certain favored private parties the unfettered power to veto, at any time prior to governmental approval and without any standards or reasons, another's right to engage in constitutionally protected freedom of expression. *Cf. FW/PBS*, 493 U.S. at 223, 110 S.Ct. 596 (holding that a licensing scheme for adult businesses that created the risk of arbitrary denials was an unconstitutional prior restraint); *see also Eubank v. City of Richmond*, 226 U.S. 137, 144–45, 33 S.Ct. 76, 57 L.Ed. 156 (1912) (striking down a zoning ordinance that required the city's Building Committee to establish set-back lines for a given piece of property whenever requested to

do so by two-thirds of the adjacent property owners). Thus, the present system, under which private third parties may effectively nullify, for any reason, the few areas in the City set aside for potential adult uses, makes it unreasonably difficult, if not impossible, for an adult use applicant to complete the permit process.

■ An inquiry into the reasonableness of alternative avenues under *Renton* necessarily must be fact specific. *See, e.g., CLR Corp. v. Henline*, 702 F.2d 637, 639 (6th Cir.1983) (holding an ordinance unconstitutional, even though it was virtually identical to another constitutional ordinance, because the effect of each ordinance was different in each city). In a city of 100,000, with only four potential simultaneously available sites,[10] and at least one known, active opponent of adult businesses, the heightened risk to establishing an adult business created by the sensitive use veto chills protected speech in an unconstitutional manner.[11]

The City and the dissent contend that the concern over the sensitive use veto is founded on a "hypothetical event" and that there is no evidence to establish a "tangible probability" that a sensitive use establishment will seek to disqualify any proposed adult business. This argument is puzzling since Simi Valley actually issued a disqualifying over-the-counter permit to the Joshua Institute the same day that Young's application was deemed complete. Furthermore, Walker, the head of the Joshua Institute, testified that he believed that the Bible study group would preclude Young's business from opening as planned. Hence, the risk that a sensitive use will veto potential adult business owners and deliberately frustrate their efforts by locating a sensitive use nearby is real and not merely hypothetical.

■ Moreover, in order for an ordinance to be facially invalid there need only be a "realistic danger that the statute itself will compromise recognized First Amendment protections of parties not before the Court." *Taxpayers for Vincent*, 466 U.S. at 801, 104 S.Ct. 2118. Thus, contrary to the City's and the dissent's contention, it is not dispositive that the karate school was an independent reason for the permit denial in this case. Prospective adult business owners still reasonably may fear that another organization like the Joshua Institute will crop up every time that they attempt to obtain a permit and thus refrain from applying. This is especially true where so few sites are available within the City. Anyone wishing to suppress this form of speech could monitor adult business applications and establish a nearby sensitive use before the adult business' application process had been completed.

Thus, in this case, there is a realistic danger that the ordinance will "compromise recognized First Amendment protections" of those people who wish to operate adult businesses in Simi Valley. *Taxpayers for Vincent*, 466 U.S. at 801, 104 S.Ct. 2118. The deterrent effect therefore is both "real and substantial," because at any moment a project can be defeated by a

---

10. Although we hold that four potential, simultaneously available sites are not inadequate as a matter of law, *see* Part II.C, *infra*, the number of available sites is relevant in deciding whether the sensitive use veto poses a realistic danger that protected speech will be chilled. The fact that so few sites are available makes it far more likely that a person or group of persons could exclude all adult businesses from Simi Valley, if they so desired.

11. In addition, because Simi Valley has never had an adult use business, any proposed adult business is likely to attract publicity sur-

rounding its permit application and the applicant's opponents can easily find out about the proposed permit and attempt to stop it by applying for an over-the-counter sensitive use permit. Young's application, for example, garnered at least some local publicity. On June 10, 1995, the *Simi Valley Star* ran a two-page article featuring Young's proposed adult business. The article discussed the permitting process, identified the location of the proposed site, and explained that the business could not be located near schools, parks, or churches.

private individual or group who wishes to establish a park, Bible study group, or day care center. *American Mini Theatres,* 427 U.S. at 60, 96 S.Ct. 2440.

The City also argues that because the case law does not impose a duty upon governing bodies to ensure the availability of a prospective adult business owner's preferred site, *see Renton,* 475 U.S. at 54, 106 S.Ct. 925, the sensitive use veto must be constitutionally permissible. We reject this contention. In *Renton,* the respondents argued that almost all of the available land under the ordinance already was occupied by existing businesses or was not currently for sale or lease. *See id.* at 53, 106 S.Ct. 925. The Court held that potential adult business owners must "fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees." *Id.* at 54, 106 S.Ct. 925. Here, Young is not asking for special treatment. In fact, he already had obtained a lease and was ready to move forward with his project. A potential adult business owner is not on "equal footing" with other businesses, however, when his permit can be defeated after he buys or leases a site, merely because another member of the community disagrees with the content of his speech. This is not the type of market competition to which the Court in *Renton* was referring. Thus, while local governments are not required to assure adult businesses that they will be able to obtain their preferred site at "bargain prices" in order to comply with the First Amendment, they also may not impose a procedural requirement that puts potential adult businesses at a severe disadvantage in the market. *Id.*

### 3.

Our conclusion that the sensitive use veto in this case is unconstitutional is buttressed by several other lines of cases. For example, the doctrine of prior restraint—an area of law also dealing with freedom of speech under the First Amendment—provides a helpful analogy. "A pri-

or restraint exists when the enjoyment of protected expression is contingent on the approval of government officials." *Baby Tam I,* 154 F.3d at 1100. When an approval process lacks procedural safeguards or is completely discretionary, there is a danger that protected speech will be suppressed impermissibly because of the government official's, or, as here, a delegated private party's, distaste for the content of the speech. *See FW/PBS,* 493 U.S. at 226, 110 S.Ct. 596. Thus, a licensing scheme regulating adult entertainment must contain at least two procedural safeguards in order to be constitutional. *See 4805 Convoy,* 183 F.3d at 1113. First, it must specify a reasonable time period in which the decision whether to issue the license must be made. Second, it must provide for prompt judicial review. *See id.*

The Simi Valley ordinance contains both of the aforementioned safeguards and Simi Valley officials have almost no discretion to deny a permit after the application is complete and the requirements are met. *See* Simi Valley Mun.Code §§ 9–1.1103 (as amended); 9–1.2004. In this way, it is not an unconstitutional prior restraint. Rather, the ordinance delegates that discretion to private parties who may defeat a proposed adult business permit and effectuate a complete ban on certain protected forms of expression. We hold that a city cannot accomplish through private parties that which it is forbidden to do directly under the First Amendment—namely, block the establishment of adult businesses in Simi Valley. *See Rutan v. Republican Party,* 497 U.S. 62, 77–78, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (stating that "[w]hat the First Amendment precludes the government from commanding directly, it also precludes the government from accomplishing indirectly").

A similar statute involving a private party veto was struck down pursuant to the Establishment Clause in *Larkin v. Grendel's Den, Inc.,* 459 U.S. 116, 103 S.Ct. 505,

74 L.Ed.2d 297 (1982). In *Larkin*, the Supreme Court held unconstitutional a Massachusetts statute that gave churches and schools the power effectively to veto applications for liquor licenses within a 500–foot radius of the church or school. Although the challenge in *Larkin* concerned the Establishment Clause rather than the Speech Clause, the underlying problem in both cases is the same.

The Court in *Larkin* was concerned that the churches' power under the statute was "standardless, calling for no reasons, findings, or reasoned conclusions." *Id.* at 125, 103 S.Ct. 505. Similarly, Simi Valley has given an implicit power to any potential sensitive use, perhaps impermissibly motivated by the desire to keep the city free of this form of speech, to veto an adult establishment.[12] Although *Larkin* is distinguishable because the churches in that case had an explicit veto power, the record in this case demonstrates that it is relatively easy for certain types of sensitive uses to obtain over-the-counter permits and, thus, effectively veto the prospective use.

Finally, courts have been concerned in contexts outside the First Amendment about local governments' attempts to delegate to private landowners the power to determine how another private party may use his or her land "uncontrolled by any standard or rule prescribed by legislative action." *Geo–Tech Reclamation Indus., Inc. v. Hamrick*, 886 F.2d 662, 665 (4th Cir.1989) (holding unconstitutional a statute that gave local residents de facto veto power over the landfill permitting process) (quoting *Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928) (holding unconstitutional a zoning ordinance that gave certain landowners the unlimited right to prevent a trustee from using its land for a proposed home)); *see also Eubank*, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (strik-ing down statute that allowed ⅔ of property owners to direct street committee to establish a building line on other's property). Each of those cases held that the delegation of power to private individuals to decide what others could do with their land was "repugnant to the due process clause." *Roberge*, 278 U.S. at 122.

The major concern in these cases was that administrative decision-making would be "subservient to selfish or arbitrary motivations or the whims of local taste." *Geo–Tech*, 886 F.2d at 666; *see also Roberge*, 278 U.S. at 122. Here, the concern is even greater for two reasons. First, unlike in *Roberge*, *Eubank* and *Geo–Tech*, the delegation here infringes on others' right to engage in a fundamental First Amendment activity. *See Schad*, 452 U.S. at 65, 101 S.Ct. 2176; *Kev*, 793 F.2d at 1058. The ability to open a landfill or build one's house to certain specifications are not forms of expression protected by the Constitution in the same way that freedom of expression is protected. Second, because the protected activity in this case is extremely controversial, there exists an even greater risk that private parties will use their power to block adult uses for the purpose of suppressing this speech. All of these cases lend support to the conclusion that by giving private parties the right to control the content of speech with respect to public zoning laws, Simi Valley has unreasonably restricted alternative avenues of communication under *Renton*.

We therefore hold that the sensitive use veto provision of the Simi Valley ordinance is unconstitutional on its face.

## C. Number of Sites

■ We now turn to the issue of whether the number of simultaneously available sites under the ordinance is sufficient to allow for "reasonable alternative avenues of communication." *Renton*, 475 U.S. at 50, 106 S.Ct. 925. The district

---

**12.** As in *Larkin*, there also is a substantial risk that if an adult business ever opens in Simi Valley, subsequent applicants might be frus-trated by those who desire to restrain competition.

court held that, "as a matter of general law," four possible simultaneous sites "simply does not amount to a reasonable number of alternative means of communication" to satisfy the test in *Renton*.[13] *Young*, 977 F.Supp. at 1022. The court then enjoined Simi Valley from enforcing the buffer zone requirements contained in its adult use zoning scheme. *Id.* This holding was erroneous. While recognizing that *Renton* requires a "case by case analysis," the district court did not perform a fact-specific inquiry to determine whether the number of potential sites is reasonable, given the particular characteristics of Simi Valley, including its size and make-up, as required by *Renton*. *Id.* at 1019; *see, e.g., CLR Corp.*, 702 F.2d at 639; *see also University Books & Videos, Inc. v. Metropolitan Dade County*, 33 F.Supp.2d 1364, 1371 (S.D.Fla.1999) (noting that reviewing court must "determine whether the number of sites that potentially could exist under the ordinance is reasonable, given the characteristics of the city or county being regulated").

Because there are no current adult businesses in Simi Valley and the City has never had an adult use applicant other than Young, we think it is premature to rule, as a matter of law, that the number of sites at which an adult business could operate is insufficient. While we recognize that the lack of demand may be correlated to the chilling effect of the ordinance as written, it is unclear whether the deletion of the sensitive use veto provision will cause the demand for adult businesses in Simi Valley to rise. The factual record is devoid of any evidence that the number or location of potential, simultaneously available sites, rather than the sensitive use veto provision, has denied reasonable avenues of communication for those who wish to engage in protected speech of the type regulated by the ordinance.

Since *Renton*, this court has twice held local zoning ordinances unconstitutional because they did not provide sufficient alternative sites for adult businesses to locate. *See Topanga Press*, 989 F.2d 1524; *Walnut Properties*, 861 F.2d 1102. The court below relied almost exclusively on *Walnut Properties*, in which we invalidated a Whittier, California, ordinance that prohibited the establishment of all but three adult business sites throughout the city. 861 F.2d at 1108. Without extended analysis, the district court noted that "[t]he circumstances in the instant case are remarkably similar" to those in *Walnut Properties*. *Young*, 977 F.Supp. at 1022. The district court only compared the number of sites available under the Whittier and Simi Valley ordinances. *See id.* ("The fact that there may be four sites which can exist simultaneously in the instant case as opposed to three is immaterial, given the Ninth Circuit's finding that three sites in the City of Whittier amounted to a 'glaring' constitutional violation."). The circumstances in *Walnut Properties*, however, are quite different from the facts in this case.

First, at the time the Whittier ordinance was passed, the city had 13 adult businesses located within its boundaries, only three of which could continue operating in the city under the new ordinance. *Id.* at 1104, 1108. Second, enforcement of the ordinance in *Walnut Properties* would

---

**13.** There is some disagreement regarding the relevant number of sites available for adult businesses. There are presently a total of 35–120 sites where an adult business potentially could locate in Simi Valley. Because of the buffer zone requirement that each adult business must be at least 1,000 feet from another, however, only three or four adult use sites are simultaneously available under the ordinance. Both *Topanga Press* and *Walnut Properties* emphasize that it is appropriate to examine the number of adult businesses that can simultaneously operate, rather than the number of different sites at which any one adult business could locate, assuming that there were no others in existence. *See Topanga Press*, 989 F.2d at 1533; *Walnut Properties*, 861 F.2d at 1108–09. For purposes of this appeal, we will assume, as did the district court, that there are four simultaneously available sites for adult businesses.

have forced the closure of the only adult theater then existing in Whittier, with no definite prospect of a place to relocate. *Id.* at 1110. It was on the basis of these particular facts that the court held "the paucity of alternative sites is glaring." *Id.* at 1109.

■ Conversely, in the present case, there is no evidence that more than four adult businesses would be opened in Simi Valley even in the absence of any adult use zoning regulations. In fact, Young is the only person ever to have applied for a permit to open an adult business in the City's history. Data regarding the number of sites available for adult use is meaningless without a contextual basis for determining whether that number is sufficient for that particular locale. *Walnut Properties* does not stand for the proposition that a zoning ordinance which allows only three, or even four, sites for adult use to exist simultaneously is per se unconstitutional, as the district court's order suggests.

Nor does *Topanga Press* aid Young's case. There, we invalidated a Los Angeles adult business ordinance where the total number of adult businesses that could co-exist was fewer than the number of adult businesses already operating at the time the ordinance was enacted. *See* 989 F.2d at 1532–33. Of the existing 102 businesses in Los Angeles, all but one would have had to relocate under the new ordinance. *See id.* Without so holding, we assumed that the relevant inquiry was whether the number of locations left available for adult businesses was greater than the demand for those businesses. *See id.* This "supply and demand" analysis also has been employed by other circuits in determining the adequacy of alternative avenues of communication. *See Woodall v. City of El Paso,* 49 F.3d 1120, 1126 (5th Cir.1995) ("Adult [b]usinesses had to show that the areas left open to them were inadequate to satisfy the demand for adult business locations."); *Buzzetti v. City of New York,* 140 F.3d 134, 140 (2d Cir.1998) (finding an

ordinance constitutional that allowed for the operation of approximately 500 adult businesses where there were fewer than 200 in existence).

■ We decline, however, to adopt a bright line rule that an ordinance is constitutional when the number of locations available for such businesses equals or exceeds the number of existing adult businesses. This "supply and demand" analysis is insufficient to account for the chilling effect that an adult use zoning ordinance may have on prospective business owners. This point is especially salient in the present case where another feature of the ordinance may deter business owners from applying for permits, thus artificially curtailing the demand. Rather, supply and demand should be only one of several factors that a court considers when determining whether an adult business has a "reasonable opportunity to open and operate" in a particular city. *Topanga Press,* 989 F.2d at 1529. A court should also look to a variety of other factors including, but not limited to, the percentage of available acreage theoretically available to adult businesses, the number of sites potentially available in relation to the population, "community needs, the incidence of [adult businesses] in other comparable communities, [and] the goals of the city plan." *International Food & Beverage Sys. v. City of Fort Lauderdale,* 794 F.2d 1520, 1526 (11th Cir.1986); *see also 3570 East Foothill Blvd., Inc. v. City of Pasacena,* 980 F.Supp. 329, 341 (C.D.Cal. 1997).

In this appeal, Young does not argue that any of the enumerated factors weighs in favor of a finding that there is no "reasonable opportunity to open and operate" an adult business in Simi Valley. *Renton,* 475 U.S. at 54, 106 S.Ct. 925. Rather, his claim rests primarily on the sensitive use veto provision, which we agree is unconstitutional. Given the history of scant demand, and the lack of evidence that others wish to open an adult business in Simi Valley, we cannot say, on this record, that

four, simultaneously available sites are insufficient, as a matter of law, to provide reasonable alternative avenues of expression under *Renton*.[14]

## III. CONCLUSION

Because we agree with the district court's holding that the ordinance's sensitive use veto provision is unconstitutional, we affirm the judgment in favor of Young. The permanent injunction, however, must be vacated and refashioned. The district court permanently enjoined Simi Valley "from enforcing its current zoning scheme with respect to the distance and buffer requirement currently in effect for adult theaters." *Young*, 977 F.Supp. at 1022. In light of the fact that we have invalidated only the sensitive use veto provision of the ordinance, and not its distance and buffer requirements, the injunction must be vacated as overbroad. On remand, the injunction should be narrowed so that Simi Valley is permanently enjoined from enforcing only the sensitive use veto provision of the ordinance. We remand to the district court for further proceedings in light of this opinion. Young shall recover his costs on appeal from Simi Valley.

**AFFIRMED, injunction VACATED, and REMANDED.**

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

The City of Simi Valley enacted a reasonable zoning ordinance regulating the location of adult businesses. Philip Young, who was denied a permit to open a nude dancing club in a shopping center, challenged the ordinance on First Amendment grounds. A jury that heard Young's claims unanimously concluded that the ordinance, as applied by Simi Valley officials in this case, did not violate Young's First Amendment rights.

The jury was, however, unable to reach a decision as to whether the ordinance as a general matter effectively denies persons a reasonable opportunity to own and to operate adult businesses in Simi Valley. Accordingly, no verdict was rendered and the district court declared a mistrial. The district court then granted Young judgment as a matter of law, finding the City's ordinance unconstitutional both on its face and as applied. *See Young v. City of Simi Valley*, 977 F.Supp. 1017, 1022 (C.D.Cal. 1997).

The court now sustains Young's constitutional challenge to the "sensitive use" provision of Simi Valley's ordinance, which prohibits the opening of adult businesses near certain sensitive uses such as youth-oriented businesses, schools, and churches. Based on the theoretical possibility that a sensitive use might apply for a zoning permit and disqualify a pending application for an adult use located nearby, the court concludes that the ordinance gives private parties a so-called "sensitive use veto" over the opening of adult businesses in Simi Valley. Taking this hypothetical and running with it, the court declares the sensitive use provision unconstitutional on its face. The majority reaches this conclusion even though there is no dispute that the provision *was not applied unconstitutionally* against Young, whose own attempt to secure an adult use permit was in any event precluded by a preexisting sensitive use—a youth-oriented karate studio located in close proximity to Young's proposed site for a nude dance establishment.

As a plaintiff raising a facial challenge, Young bears "a heavy burden" in advancing his claim. *National Endowment for the Arts v. Finley*, 524 U.S. 569, 580, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998) (internal quotation marks omitted). As the Supreme Court has recently reminded us, "[f]acial invalidation 'is, manifestly, strong medicine' that 'has been employed by the Court sparingly and only as a last resort.'" *Id.* (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d

---

**14.** This is not to say that four simultaneously available sites will not be inadequate in the future when circumstances may be different. That case, however, is not before us today.

830 (1973)); *see also Los Angeles Police Department v. United Reporting Publishing Corp.,* —— U.S. ——, —— – ——, 120 S.Ct. 483, 489–90, 145 L.Ed.2d 451 (1999). Because I cannot agree with the court's facial invalidation of Simi Valley's ordinance, I must respectfully dissent.

## I

The district court struck down Simi Valley's zoning ordinance on two grounds. Neither constitutes an adequate basis for holding the ordinance unconstitutional.

## A

The district court held that the ordinance's sensitive use provision unconstitutionally gives such uses a de facto veto power over adult business permit applications. The majority agrees, finding the provision facially invalid for failing to provide would-be adult business owners with "reasonable alternative avenues of communication" as required under *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 50, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

Under the *Renton* test, Simi Valley's ordinance is constitutional, as long as it "is designed to serve a substantial government interest and allows for reasonable alternative avenues of communication." *Id.* at 50, 106 S.Ct. 925. Young concedes that the ordinance is designed to serve a substantial government interest, namely, Simi Valley's strong interest in "combat[ing] the undesirable secondary effects" of adult businesses. *Id.* at 49, 106 S.Ct. 925. The only issue in this appeal, then, is whether the ordinance "effectively deni[es] [Young] a reasonable opportunity to open and operate an adult [business] within the city." *Id.* at 54, 106 S.Ct. 925.

The district court concluded that the theoretical possibility that a sensitive use might act to disqualify Young's application *in itself* renders the ordinance unconstitutional by "mak[ing] it unreasonably difficult, if not impossible, for an adult usage applicant to complete the permit process."

977 F.Supp. 1017, 1020 (C.D.Cal.1997). The majority apparently agrees. *See* maj. op. at 818.

The possibility that a sensitive use might attempt to exercise a de facto veto power over adult business applications does exist; how this deprives Young of a reasonable opportunity to open an adult business, however, is not apparent. Under the majority's reasoning, the mere *potential* for an ordinance to be applied in an unconstitutional manner renders the ordinance altogether unconstitutional. Under such a theory, almost any adult business zoning ordinance—including the one upheld in *Renton*—would be unconstitutional. For example, an ordinance that left half of a city's space available to adult businesses and did not contain any buffer zone requirements could still be attacked based on the possibility that a sensitive use (or the city itself) could purchase all property zoned for adult businesses, leaving such businesses without any available properties at which to locate and thus depriving them of a reasonable opportunity to operate an adult business. Such a theory is untenable in light of *Renton,* where the Supreme Court reversed this court to uphold the City of Renton's ordinance as constitutional—without pausing to speculate about possible scenarios in which the ordinance might be applied unconstitutionally.

Upholding the facial constitutionality of the sensitive use provision would not place the ordinance beyond constitutional scrutiny. The provision would still be fully subject to constitutional challenge on an "as applied" basis. In this case, for example, a reasonable jury *could* have found a high likelihood that a sensitive use would act to disqualify a future permit application by Young—even though the jury that *did* hear the case apparently did not do so. At trial Young introduced evidence from which it might be inferred that the Joshua Institute was a sham opened by Norman Walker to disqualify Young's application. Based on this circumstantial evidence, a

jury could have believed that Walker would act similarly with respect to Young's future adult business permit applications.

This is not, however, the only reasonable conclusion to be drawn on the evidence. Significant evidence in the record—of a direct rather than circumstantial nature—points in the opposite direction. For instance, Walker testified that the opening of the Bible study class had nothing to do with Young's permit application; that any interaction between the Joshua Institute's application for a zoning permit and Young's application was "coincidental" and "unintentional"; and that Walker "had no idea," at the time that the Joshua Institute applied for a zoning permit, "that the effect of what [the Institute] did could stop Mr. Young" from obtaining a zoning permit for his proposed adult theater. Furthermore, the proposed location of Young's adult business was in any case already disqualified by the presence of a nearby youth-oriented business. In light of this evidence, it is not surprising that the jury found that the ordinance had not been applied unconstitutionally against Young.

In sum, the likelihood of a sensitive use acting to manipulate Simi Valley's zoning ordinances is a factual question for a jury to decide. This determination should be made on a case-by-case basis, in light of the facts and circumstances surrounding a particular adult use permit application. The district court erred in finding the ordinance facially unconstitutional and enjoining its enforcement.

### B

The district court struck down the ordinance on another ground. Under the buffer zone requirements of the ordinance, approximately four potential adult use sites exist simultaneously in Simi Valley—a city in which only one application for an adult use is pending. The district court held, as a matter of law, that four possible sites "simply does not amount to a reasonable number of alternative means of communication." 977 F.Supp. at 1022. As the majority points out, *see* maj. op. at 821–22, the district court reached this conclusion without conducting the fact-specific inquiry into reasonableness required under *Renton*.

I agree with the majority that the district court's holding on this issue was erroneous. I would, however, proceed one step further. In *Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524, 1532–33 (9th Cir.1993), we strongly suggested (but did not explicitly hold) that the constitutionality of an ordinance like Simi Valley's can be determined by comparing the supply of locations available for adult businesses to the demand for such sites. Based on the *Topanga Press* analysis, I would expressly hold that, as a matter of law, an adult business zoning ordinance violates the First Amendment if, and only if, the ordinance restricts the number of sites available to adult businesses below the demand for such properties. Such a rule has already been explicitly adopted by the Fifth Circuit, *see Woodall v. City of El Paso,* 49 F.3d 1120, 1126–27 (5th Cir.1995), and it finds support in the case law of other circuits as well, *see, e.g., Buzzetti v. City of New York,* 140 F.3d 134, 140–41 (2d Cir.1998); *Alexander v. City of Minneapolis,* 928 F.2d 278, 283–84 (8th Cir.1991). This rule provides a sensible, workable test for conducting what might otherwise be an unwieldy (and arguably standardless) inquiry into First Amendment reasonableness under *Renton*.

The majority expressly declines to adopt such a rule, reasoning that " 'supply and demand' analysis is insufficient to account for the chilling effect that an adult use zoning ordinance may have on prospective business owners." Maj. op. at 823. While the majority's concerns are legitimate, I simply fail to see how an individual can claim that he has been denied a reasonable opportunity to open an adult business as long as there exists a site within the municipality available for his business. Under *Renton,* of course, the aspiring operator of an adult establishment has no right

to his preferred business location within the city. Regulating the location of certain types of businesses is, after all, "the essence of zoning." *Renton*, 475 U.S. at 54, 106 S.Ct. 925.

Young is the only individual who has ever sought to establish an adult business in Simi Valley. The number of sites available in the City for such businesses exceeds the demand for such sites (by a multiple of three to four). The Supreme Court's decision in *Renton*, the decisions of our sister circuits, and common sense all suggest that the number of available locations is reasonable as a matter of law.

## II

Subsequent to oral argument in this case, the Supreme Court decided *City of Erie v. Pap's A.M.*, — U.S. —, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). The city of Erie, Pennsylvania, enacted an ordinance prohibiting nudity in public places. Because the ordinance's definition of "public place" included "all buildings and enclosed places owned by or open to the general public, including ... places of entertainment," the ordinance had the effect of banning nude erotic dancing. *Id.* at 1387–88 (quoting Erie, Pa., Code art. 711 (1994)).[1]

Although the members of the Court divided as to their reasoning, a majority voted to uphold the ordinance as "a content-neutral regulation that satisfies the four-part test of *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)." — U.S. at —, 120 S.Ct. at 1388. Under *Erie*, then, municipalities have the right to ban nude dancing entirely if they were to choose to do so in an effort to combat the negative secondary effects of adult entertainment establishments. If municipalities can prohibit nude dancing outright through content-neutral restrictions on conduct aimed at fighting "crime and the other deleterious effects caused by the presence of [an adult] establishment in the neighborhood," they presumably can certainly use their zoning power to achieve the same ultimate effect as a total ban. *Id.* at 1393 (O'Connor, J.) (plurality opinion).

In light of evidence in the record suggesting that Young would still seek to present erotic strip tease dancing at his proposed adult entertainment establishment, *Erie* does not control this case. It does, however, have important implications for the constitutionality of adult use zoning ordinances.

Because *Erie* did not overrule *Renton*— Justice O'Connor's plurality opinion in *Erie* relied upon *Renton* for its analysis— the two decisions must be read as consistent with each other (despite the dissent's claim of irreconcilability, *see id.* at 1407–09 (Stevens, J., dissenting)). When read together, *Erie* and *Renton* establish somewhat different frameworks for evaluating the constitutionality of content-neutral regulations of nude dancing as opposed to other forms of adult entertainment. Under *Erie*, a municipality can enact a content-neutral ordinance banning nude dancing entirely. *See id.* at 1388. Under *Renton*, however, a municipality can enact a content-neutral ordinance regulating adult entertainment only to the extent that the ordinance does not deny an individual "a reasonable opportunity to own and operate an adult theater within the city." 475 U.S. at 54, 106 S.Ct. 925. Thus, after *Erie*, the extent to which cities like Simi Valley may ban or otherwise regulate adult entertainment would appear to depend upon the specific type of entertainment being regulated. Although I believe, for the reasons set forth above, that Young's challenge to the City's ordinance fails under *Renton*, I am persuaded that his challenge would indisputably fail if governed by the *Erie* standard.

---

1. "To comply with the ordinance, ... dancers must wear, at a minimum, 'pasties' and a 'G-string.'" — U.S. at —, 120 S.Ct. at 1388.

In sum, the Supreme Court's recent decision in *Erie* reaffirms the important principle that "the government should have sufficient leeway to justify [content-neutral restrictions regulating conduct] based on secondary effects" of such conduct. *Id.* at 1396. The City would do well to consider both the holding and reasoning of *Erie* carefully in any attempt to refashion its ordinance in the wake of today's decision.

## III

Simi Valley's adult business zoning ordinance allows for "reasonable alternative avenues of communication" and does not offend First Amendment standards. Although its sensitive use provision raises constitutional concerns and may be subject to challenge on an "as applied" basis, it is not unconstitutional on its face. Furthermore, as the majority recognizes, the ordinance's distance and buffer requirements undoubtedly pass constitutional muster. I would reverse and remand for vacation of the injunction in its entirety.